# EXHIBIT 2

CIRCUIT ~~STAFFORD GENERAL DISTRICT~~ COURT

15TH JUDICIAL DISTRICT OF VIRGINIA

FILED
CLERK OF COURT

2023 NOV -6 P 1: 26

CIRCUIT COURT
STAFFORD VIRGINIA

Ryan-Tyrone: Morris,

    Plaintiff,

vs.

BRIAN WENZEL dba CFO of SYNCHRONY FINANCIAL,

    Defendant

Case No.: CL 23 00 3632-00

AMENDED COMPLAINT

    On about August 26, 2023, Plaintiff initiated communication with Defendant via a letter to "Validate Debt and Request Contract Information". Plaintiff has reason to believe that there is no debt as the Monetary Instrument taken for the alleged "loan" was taken as a deposit per 12 USC 1813(l)(1) and was never issued a cash receipt per FAS Publication 95. Plaintiff was seeking clarification of where the source funds originated. This information can be found via documents such as FR 2046, Moneynet Daily Transaction Logs, Currency Money Instrument Reports and others of the like. Despite many requests for a signed affidavit attesting to any proof that the Defendant performed is nonexistent. Plaintiff also requested information on if the note is being used in public trade that is traded on the secondary market. Doing so would be a direct violation of the National Banking Act which prohibits pledging or hypothecating any circulating notes for the purpose of procuring money to be paid in on its capital stock.

    Plaintiff is stating there has been no performance to the alleged contract from the Defendant. The note is the financial asset that funded the transaction, however it has been withheld from the Plaintiff. Plaintiff sent additional reminders to the Defendant requested a signed affidavit rebutting his claims on September 26, 2023. Plaintiff received generic electronic letters, but no affidavit from Mr. WENZEL. A Default Notice was submitted to Defendant on October 16, 2023 with one last opportunity to rebut via a sworn affidavit and again, no response. Defendant has not submitted a sworn affidavit rebutting Plaintiff's claim. Silence is acquiescence in commerce. Therefore, the Plaintiff has no choice than to presume that his claims were factual.

    Plaintiff brings forth the following counts and submits into the record all allegations supporting Plaintiff's cause of action:

AMENDED COMPLAINT - 1

### Count 1 – Breach of Fiduciary Duties

Defendant has not performed its duties and has kept the value of the note for itself causing stress and voluntary servitude to allegedly "pay" for Plaintiff's financial asset that carried the value of the note and satisfied the transaction. Defendant has acted in bad faith with its deceptive practices in creating the assumption that Plaintiff was indebted to Defendant where there was no performance from Defendant or the original alleged "lender".

### Count 2 – Laundering of Monetary Instruments

Violation of 18 USC § 1956 as the proceeds from the transaction were due to the Plaintiff, however Defendant disguised the nature, source, and ownership of the proceeds.

### Count 3 – Violation of National Banking Act

Circulating Notes are not to be used to inflate the company's capital stock or for procuring money to be paid in on its capital stock. Defendant collateralizes "loans" and utilizes a SPV (Special Purpose Vehicle) and SPE (Special Purpose Entity) to sell notes to investors to raise capital.

### Count 4 – Privacy Violation

There is no contract between the Plaintiff and Defendant. There is no written agreement from Plaintiff to Defendant granting permission to report to any Consumer Reporting Agency. Fee Schedule has been submitted for compensation for privacy violations.

### Damages

WHEREFORE, plaintiff seeks compensatory damages in the amount of $3,112,145, plus court fees and costs in connection with this action. Additionally, Plaintiff seeks to have reported to Credit Reporting Agencies be marked as "Paid in Full" with no negative remarks.

Respectfully submitted this 6th day of November, 2023.

_Ryan-Tyrone: Morris_
Ryan-Tyrone: Morris

AMENDED COMPLAINT - 2

SynchronySeries class A(2022-2) notes' key features include the following:

- The notes will pay fixed-rate interest monthly on the 15th day of each calendar month, or the next business day if it is not a business day, beginning in August 2022.
- Subordination of 26.00%, as a percentage of the capital structure, provided by the subordinated transferor amount (STA).

## Transaction Overview

Chart 1

## Transaction Structure



Copyright © 2022 by Standard & Poor's Financial Services LLC. All rights reserved.

The main features of the SynchronySeries securities include the following:

- Synchrony Bank originates private-label and co-branded credit card accounts typically through exclusive partnership agreements with retail partners. Synchrony Bank also owns the credit card accounts, and in its capacity as a seller, under the receivable sale agreement, sells eligible receivables to Synchrony Card Funding LLC. As the transferor under the transfer agreement, Synchrony Card Funding LLC transfers and assigns all rights, titles, and interests of the eligible receivables to Synchrony Card Issuance Trust. The collateral backing the SynchronySeries notes is the assigned receivables.
- The SynchronySeries is structured as delinked tranches that may be issued if the issuance conditions stipulated in the program's documents are satisfied.

© S&P Global Ratings. All rights reserved. No reprint or dissemination without S&P Global Ratings' permission. See Terms of Use/Disclaimer on the last page.

2863186

CIRCUIT CTY

STAFFORD ~~GENERAL DISTRICT~~ COURT

15TH JUDICIAL DISTRICT OF VIRGINIA

FILED
CLERK OF COURT
2023 NOV -6 P 1: 26
CIRCUIT COURT
STAFFORD VIRGINIA

Ryan-Tyrone: Morris,

    Plaintiff,

vs.

MICHAEL SANTOMASSIMO dba CFO of WELLS FARGO & CO.,

    Defendant

Case No.: CL 23-00 3633-00

AMENDED COMPLAINT

    On about August 26, 2023, Plaintiff initiated communication with Defendant via a letter to "Validate Debt and Request Contract Information". Plaintiff has reason to believe that there is no debt as the Monetary Instrument taken for the alleged "loan" was taken as a deposit per 12 USC 1813(I)(1) and was never issued a cash receipt per FAS Publication 95. Plaintiff was seeking clarification of where the source funds originated. This information can be found via documents such as FR 2046, Moneynet Daily Transaction Logs, Currency Money Instrument Reports, Currency Transaction Reports and others of the like. Despite many requests for a signed affidavit attesting to any proof that the Defendant or any other alleged "lenders" loaned any funds to the Plaintiff is nonexistent. Plaintiff also requested information on if the note is being used in public trade, utilizing it as a Mortgaged Backed Security, that is traded under ticker symbols such as "WFC.PRL", et al. Doing so would be a direct violation of the National Banking Act which prohibits pledging or hypothecating any circulating notes for the purpose of procuring money to be paid in on its capital stock.

    Through the transmittal of correspondence, a copy of the note and Deed of Trust were submitted. Plaintiff is stating there has been no performance to the alleged contract from the Defendant or any previous alleged "lenders". The note is the financial asset that funded the transaction, however it has been withheld from the Plaintiff. Plaintiff sent additional reminders to the Defendant requested a signed affidavit rebutting his claims on September 19, 2023 and October 7, 2023. Plaintiff received phone calls and letters from a "Mikela" and "Ron", but no affidavit from Mr. SANTOMISSIMO. A Default Notice was submitted to Defendant on October 16, 2023 with one last opportunity to rebut via a sworn affidavit and again, no response. Defendant has not submitted a sworn affidavit rebutting Plaintiffs claim. Silence is acquiescence in commerce. Therefore, the Plaintiff has no choice than to presume that his claims were factual.

AMENDED COMPLAINT - 1

### Count 1 – Breach of Fiduciary Duties

Defendant has not performed its duties and has kept the value of the note for itself causing years of stress and voluntary servitude to allegedly "pay" for Plaintiff's financial asset that carried the value of the note and satisfied the transaction. Defendant has acted in bad faith with its deceptive practices in creating the assumption that Plaintiff was indebted to Defendant where there was no performance from Defendant or the original alleged "lender".

### Count 2 – Tax Evasion

Defendant has not submitted any tax forms such as a 1066 REMIC Income Tax Form, 1099A, 1099C, 1099OID, 8281, et al.

### Count 3 – Laundering of Monetary Instruments

Violation of 18 USC § 1956 as the proceeds from the transaction were due to the Plaintiff, however Defendant disguised the nature, source, and ownership of the proceeds.

### Count 4 – Violation of National Banking Act

Circulating Notes are not to be used to inflate the company's capital stock or for procuring money to be paid in on its capital stock. Defendant collateralizes "prime GSE (Government-Sponsored Enterprise) eligible mortgages (99.35%) with the remaining being non-conforming QMs" to sell to investors to raise capital.

### Count 5 – Privacy Violation

There is no contract between the Plaintiff and Defendant. There is no written agreement from Plaintiff to Defendant granting permission to report to any Consumer Reporting Agency. Fee Schedule has been submitted for compensation for privacy violations.

### Damages

WHEREFORE, plaintiff seeks compensatory damages in the amount of $3,464,981.18, plus court fees and costs in connection with this action. Additionally, Plaintiff seeks to have reported to Credit Reporting Agencies be marked as "Paid in Full".

Respectfully submitted this 6th day of November, 2023.

*Ryan-Tyrone Morris*
Ryan-Tyrone Morris

AMENDED COMPLAINT - 2

Table 2

## Updated Credit Score Statistics

| FICO score | Current balance (%) | No. of loans | Average current balance (000s $) |
|---|---|---|---|
| 750+ | 72.57 | 504 | 666.7 |
| 725-749 | 13.95 | 96 | 673.0 |
| 700-724 | 7.33 | 49 | 692.8 |
| 675-699 | 5.18 | 35 | 685.1 |
| Below 675 | 0.97 | 7 | 636.7 |
| Total | 100.0 | 691 | 670.0 |

## Transaction Structure

### Transaction Structure



Copyright © 2022 by Standard & Poor's Financial Services LLC. All rights reserved.

The transaction is structured as a double true sale of the underlying receivables from the seller

© S&P Global Ratings. All rights reserved. No reprint or dissemination without S&P Global Ratings' permission. See Terms of Use/Disclaimer

2777615

STAFFORD ~~GENERAL DISTRICT~~ COURT  CIRCUIT REY

15TH JUDICIAL DISTRICT OF VIRGINIA

Ryan-Tyrone: Morris,

    Plaintiff,

vs.

MICHAEL LINFORD dba CFO of AFFIRM HOLDINGS INC.,

    Defendant

Case No.: CL 23 00 3631-00

AMENDED COMPLAINT

FILED
CLERK OF COURT
2023 NOV -6 P :27
CIRCUIT COURT
STAFFORD VIRGINIA

    On about August 26, 2023, Plaintiff initiated communication with Defendant via a letter to "Validate Debt and Request Contract Information". Plaintiff has reason to believe that there is no debt as the Monetary Instrument taken for the alleged "loan" was taken as a deposit per 12 USC 1813(l)(1) and was never issued a cash receipt per FAS Publication 95. Plaintiff was seeking clarification of where the source funds originated. This information can be found via documents such as FR 2046, Moneynet Daily Transaction Logs, Currency Money Instrument Reports, Currency Transaction Reports and others of the like. Despite many requests for a signed affidavit attesting to any proof that the Defendant performed is nonexistent. Plaintiff also requested information on if the note is being used in public trade that is traded on the secondary market. Doing so would be a direct violation of the National Banking Act which prohibits pledging or hypothecating any circulating notes for the purpose of procuring money to be paid in on its capital stock.

    Plaintiff is stating there has been no performance to the alleged contract from the Defendant or Celtic Bank, alleged "lender". The note is the financial asset that funded the transaction, however it has been withheld from the Plaintiff. Plaintiff sent additional reminders to the Defendant requested a signed affidavit rebutting his claims on September 16, 2023 and October 7, 2023. Plaintiff received generic electronic letters, but no affidavit from Mr. LINFORD. A Default Notice was submitted to Defendant on October 18, 2023 with one last opportunity to rebut via a sworn affidavit and again, no response. Defendant has not submitted a sworn affidavit rebutting Plaintiffs claim. Silence is acquiescence in commerce. Therefore, the Plaintiff has no choice than to presume that his claims were factual.

    Plaintiff brings forth the following counts and submits into the record all allegations supporting Plaintiff's cause of action:

AMENDED COMPLAINT - 1

### Count 1 – Breach of Fiduciary Duties

Defendant has not performed its duties and has kept the value of the note for itself causing stress and voluntary servitude to allegedly "pay" for Plaintiff's financial asset that carried the value of the note and satisfied the transaction. Defendant has acted in bad faith with its deceptive practices in creating the assumption that Plaintiff was indebted to Defendant where there was no performance from Defendant or the original alleged "lender".

### Count 2 – Laundering of Monetary Instruments

Violation of 18 USC § 1956 as the proceeds from the transaction were due to the Plaintiff, however Defendant disguised the nature, source, and ownership of the proceeds.

### Count 3 – Violation of National Banking Act

Circulating Notes are not to be used to inflate the company's capital stock or for procuring money to be paid in on its capital stock. Defendant collateralizes "loans" and utilizes a SPV (Special Purpose Vehicle) and SPE (Special Purpose Entity) to sell notes to investors to raise capital.

### Damages

WHEREFORE, plaintiff seeks compensatory damages in the amount of $9,370.87, plus court fees and costs in connection with this action. Additionally, Plaintiff seeks to have reported to Credit Reporting Agencies be marked as "Paid in Full".

Respectfully submitted this 6th day of November, 2023.

*Ryan-Tyrone: Morris*
Ryan-Tyrone: Morris

AMENDED COMPLAINT - 2



## Transaction Structure
### Structural Summary

### Dates

- Date of Issuance is on or about February 18, 2021.
- Statistical Cutoff Date means the close of business on January 19, 2021.
- Monthly Payment Date will be the 15th day of each month or the next business day, commencing April 15, 2021.
- Revolving Period Termination Date means the earlier of July 31, 2022, and the date on which an Amortization Event occurs.
- Maturity Date means August 15, 2025.

base, continuously innovating underwriting and fraud identification models, and providing multiple channels of delivery. Affirm currently partners with more than 6,500 merchants and, since the launch of its inaugural product, has issued more than 17.0 million Affirm Loans and generated over $11.0 billion in loan originations.

Affirm provides access to point-of-sale consumer installment loans through the Affirm Platform, which includes partnering and integrating with retail merchants (except, in the case of Affirm Anywhere Loans, where no merchant partnership or integration exists) and originating through third-party banks, providing access for consumers to obtain Affirm Loans. All Affirm Loans have fixed interest rates (or are non-interest bearing), are fully amortizing; have no late fees, deferred interest or other finance charges; and have terms that may range from 30 days to 60 months. A portion of the initial pool of Receivables consists of non-interest bearing Affirm Loans.

Affirm's core product, the point-of-sale unsecured consumer loan, is offered to finance online and in-store consumer purchases. Each core loan application requires the potential borrowers to provide their first and last name, mobile phone number, date of birth, email address, and last four digits of their social security number. In certain cases, Affirm asks for additional information such as address confirmation, full social security number, bank account data, income data, or answers to knowledge-based questions about the potential borrower, which may be used for credit or identity verification purposes.

**Originators**

Affirm Loans are originated by two bank partners, CRB and Celtic Bank, and by ALS, a subsidiary of Affirm. Except in the case of ALS, each Originator and Affirm has or will have entered into certain agreements where Affirm markets and services Affirm Loans and CRB and Celtic Bank originate such Affirm Loans and earn an origination fee, a performance fee, and accrued interest on the Affirm Loans for the period that it holds the Affirm Loans.

CRB and Celtic Bank focus on deposits, originating loans, and also operate as a third party for marketplace lending platforms to originate loans. CRB and Celtic Bank currently has relationships with a number of different marketplace lenders including Upstart, Freedom, Marlette Funding, Kabbage and Square Capital.

CRB and Celtic Bank are required to put in place measures to control, monitor, and supervise the operation of the Affirm Loan program, including origination of the Affirm Loans. CRB and Celtic Bank's participation in the program is subject to oversight by its regulatory agencies, and under each respective bank program agreements, Affirm has agreed to submit to any examination that may be required by any such regulatory agency that has audit and examination authority over CRB and Celtic Bank.

CRB and Celtic Bank will make certain representations and warranties with respect to the Affirm Loans.